611 P.2d 1125 (1980)
Ronnie NEAL, Appellant,
v.
Hayden H. DONAHUE; Harold Sullivan; Central State Griffin Memorial Hospital; Mrs. G. K. Sutherland; Harvey E. Dean; Bert McElroy; Charles E. Smith, Jr.; Mrs. J. H. White; Julie Lowe; and Minnie Sperry, Appellees.
No. 50255.
Supreme Court of Oklahoma.
May 27, 1980.
R. Allen Benningfield, Robert M. Butler, James C. Linger, Tulsa, for appellant.
George Carrasquillo, Tulsa, Nancy C. Laughlin, Pierce, Couch, Hendrickson & Short, Oklahoma City, David W. Griffith, Jarboe, Keefer & Barrow, Tulsa, for appellees.
*1126 BARNES, Judge:
In this case, we are asked to review an order of the trial court which held that the court lacked jurisdiction over the parties and the subject matter, based upon the defendants' position that the defendants were immune from suit because the negligent acts alleged against them were performed by them in their capacities as officers and agents of the State while performing *1127 governmental functions. The facts giving rise to the controversy are as follows:
Ronnie Neal filed a wrongful death action on behalf of himself and as next of kin of Craig Neal, his three-year-old deceased son, who was strangled to death by Wayne Garrison, who at the time of the strangling was, by virtue of a court order adjudging him as a juvenile in need of supervision, in the custody of the Phil Smalley Children's Treatment Center, a division of Central State Griffin Memorial Hospital. The wrongful death action was brought against the following defendants:
1. Central State Griffin Memorial Hospital;
2. Dr. Hayden H. Donahue, Superintendent of Central State Hospital, and a member of the State Mental Health Board;
3. Dr. Harold Sullivan, the member of the Staff of Phil Smalley Children's Treatment Center, in change of the custodial supervision and treatment of Wayne Garrison;
4. Members of the State of Oklahoma Mental Health Board, Mrs. G.K. Sutherland, Harvey E. Dean, Bert McElroy, Charles E. Smith, Jr., and Mrs. J.H. White;
5. Julie Lowe, Wayne Garrison's mother;
6. Minnie Sperry, the natural grandmother and guardian of Wayne Garrison.
The question before us does not involve either Mrs. Lowe or Mrs. Sperry, as the trial court's action did not affect the trial court's jurisdiction over them. Nor at this point does the appeal concern the members of the Oklahoma Mental Health Board, as the Appellant has moved to dismiss the appeal as to those defendants below. Thus, we are asked to determine whether the trial court's ruling on the question of jurisdiction was correct as to Dr. Hayden Donahue, Dr. Harold Sullivan, and Central State Griffin Memorial Hospital.

I.
We will first determine whether a cause of action was stated against Central State Griffin Memorial Hospital, a State institution. This Court has repeatedly recognized that the sovereign is immune from liability and suit without its waiver or consent.[1] Our first definite departure from this holding was in State ex rel. State Insurance Fund v. Bone, Okl. 344 P.2d 562 (1959). In that case, we held that the State was not immune from liability or suit when engaged in activities of a business enterprise  a proprietary activity. In reaching this holding, we stated:
"* * * suits against state agencies with respect to matters in which they have assumed to act in a private or nongovernmental capacity are not suits against the state. In 81A C.J.S. States § 216, subdivision b, paragraph (4) Nongovernmental Agencies and Corporations, it is stated:
"`Suits against state agencies with relation to matters in which they have assumed to act in a private or nongovernmental capacity, and various suits against certain corporations created by the state for public purposes, but to engage in matters partaking more of the nature of ordinary business rather than functions of a governmental or political character, are not regarded as suits against the state. * * *'"
In Terry v. Edgin, Okl., 598 P.2d 228 (1979), this Court held that counties are not immune from liability for tortious conduct occurring during the performance of a proprietary function. More recently, in Hershel v. University Hospital Foundation, Okl., 610 P.2d 237 (1980), we extended the rule in Terry v. Edgin, supra, applying it to the sovereign State of Oklahoma, as we had in State Insurance Fund v. Bone, supra, thus making the State liable for tortious conduct arising out of the performance of proprietary functions.
*1128 Appellant argues that the Appellee State Hospital was engaged in a proprietary function because the Defendant Hospital was similar to private mental hospitals, and was in competition with all such private hospitals, just as the State Insurance Fund was in competition with all other insurance companies writing similar policies. Based upon this reasoning, Appellant contends that the operation of Central State Griffin Memorial Hospital is a proprietary and not a governmental function. We cannot agree with Appellant's conclusion.
Under the facts alleged in Appellant's petition, the juvenile, thirteen-year-old Wayne Garrison, after strangling four-year-old Dana Dyan Dean, was adjudged by the Juvenile Court of Tulsa County to be in need of supervision, and was placed in the custodial environment of the Defendant Hospital because he had a known propensity of homicidal acts toward small children. As alleged, the duty breached by the various defendants was their duty to protect the general public from the homicidal tendencies of Wayne Garrison. Protection of the public from the harmful tendency of those incarcerated in State institutions is, we hold, a governmental function, as the benefits to the general public are direct, and not incidental, and because providing such protection to the public at large is not a function of independent business enterprises.
In so holding, we would note that the situation before us is not analogous to the situation presented in Hershel v. University Hospital Foundation, supra. In Hershel, we were dealing with the Hospital's duty toward its patient, while in the case before us we are dealing with the Hospital's duty toward the general public. In the Hershel case, the benefit to the public was indirect; whereas, in the case before us, the benefit to the public  protection from the homicidal tendencies of Wayne Garrison  was direct.
Because the function of providing protection to the general public is a governmental function, the State, under the doctrine of sovereign immunity, was immune from suit, unless one or more of the following conditions were present:
1. The State has given its permission to be sued.
2. An express or implied waiver of immunity was present.
3. The doctrine of sovereign immunity was abrogated.
4. The doctrine of sovereign immunity violates either the Oklahoma or Federal Constitution.
In ruling on the sufficiency of the petition and the jurisdiction of the court, the trial court specifically held that none of the four conditions set forth above was present in the case before it. Appellant contends that such conditions were present, and that the trial court erred in making its rulings, and that the rulings were prejudicial to him.
The facts alleged in the petition before us do not even suggest that the State consented to be sued, or waived the protection offered it by the doctrine of sovereign immunity. (Whether the individual defendants waived any immunity they might enjoy is considered in a later section of this opinion.)
As to the Appellant's contention that the trial court should have abrogated the doctrine of sovereign immunity as antiquated, we hold that the trial court committed no reversible error in refusing to abandon the doctrine.
We next address Appellant's contentions that the doctrine of sovereign immunity violates provisions of both the Oklahoma and United States Constitution. Article II, Section 6, of the Oklahoma Constitution, provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." [Emphasis added]
Appellant contends that the language in the above quoted constitutional section *1129 which provides that there shall be a remedy afforded for every wrong makes the State liable in tort. This Court has twice considered and rejected this contention. In Hazlett v. Board of County Com'rs., 168 Okl. 290, 32 P.2d 940 (1934), we Stated:
"As a general proposition it may be said that in cases arising out of the negligence of officers or employees of a county it is not the negligence of the county, but that of the officer or employee. * * Section 6, art. 2, Constitution, does not purport to provide a right of action exdelicto against the county. If said section authorizes an action of such nature against the county, it would authorize a like action against the state, and it has never been claimed by any one, until recently, that the state may be sued without consent thereto being properly given by the Legislature.
"We see no occasion for departing from the long established rule in this state."
Our holding in Hazlett, supra, was recently reaffirmed by this Court in Board of County Com'rs of Tulsa County v. Guaranty Loan & Inv. Corp. of Tulsa, Inc., Okl., 497 P.2d 423 (1972). Today, we once again affirm our prior holdings, and rule that the doctrine of sovereign immunity is not violative of Article II, Section 6, of the Oklahoma Constitution.
Nor do we find the doctrine of sovereign immunity violative of either the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. At the time that Amendment was adopted, the doctrine of sovereign immunity was a well established principle of common law, as well as as a principle of law expressly recognized and incorporated into the United States Constitution in the Eleventh Amendment, which made States immune from actions brought by citizens of another State, or by citizens or subjects of a foreign State. As the doctrine of sovereign immunity was recognized in the Constitution and at common law at the time the Fourteenth Amendment was adopted, we cannot say that it was the intent of that Amendment to abrogate the doctrine.
For the above stated reasons, we hold that the Defendant Hospital, as an arm of the State of Oklahoma, was immune from suit.
We next consider whether Drs. Donahue and Sullivan were, by virtue of their being agents and employees of the State, immune from suit, under the facts alleged.

II.
It is generally recognized that public officers and employees would be unduly hampered, deterred, and intimidated in the discharge of their duties, if those who act improperly, or even exceed the authority given them, were not protected to some reasonable degree by being relieved from private liability.[2] Although officers and employees of governmental agencies, including the State, are protected from tort liability while performing discretionary functions, such protection does not render such employees immune from liability for willful and wanton negligence.[3] As alleged, the actions of Dr. Harold Sullivan, who was charged with the custodial supervision and treatment of Wayne Garrison, *1130 could be fairly read as constituting acts which were willful and wanton. The plaintiff alleges that Dr. Sullivan knew, or with the exercise of reasonable investigation should have known, of the precaution dictated by the Juvenile Court of Tulsa County, that the Court was to be notified prior to the release of Wayne Garrison from the direct custodial supervision of Dr. Sullivan and the Defendant Hospital, and that Dr. Sullivan knew, or should have known, that this extra precaution was necessary because of the propensity of Wayne Garrison to murder small children.
The petition then goes on to allege that Dr. Sullivan grossly neglected his duty to the plaintiff "... in that he did in fact approve of, allow and direct, and did personally cause the said Wayne Garrison to leave the confines of his custodial supervision, and the custodial supervision of the Defendant Hospital, prior to the time when the Defendant, Dr. Harold Sullivan, had reason to believe Garrison had fully recovered from his propensity to murder and mutilate small children." The plaintiff also alleged that Dr. Sullivan wholly failed to follow the dictates and directives of the Juvenile Court of Tulsa County in releasing the juvenile Garrison from his and the Hospital's custodial supervision.
Taken as a whole, and in the light most favorable to the plaintiff, we hold that these allegations could fairly be construed to amount to willful, wanton acts on the part of Dr. Sullivan, thus taking him outside the scope of the limited protection against suit offered him by virtue of his acting as an officer or agent of the State in the performance of a governmental function.

III.
We next examine the allegations against Dr. Hayden H. Donahue, Superintendent of Central State Hospital and member of the State of Oklahoma Mental Hospital Board. After alleging that Dr. Donahue, by virtue of his position on the Board and as Superintendent of the Hospital, was responsible for setting and implementing policies and procedures to insure that orders of the District Court, such as the one before us, were carried out, and that patients such as Wayne Garrison would not be released from custodial supervision until fully recovered, Petitioner alleges that Dr. Donahue "grossly neglected his duty to Plaintiff ... in that he had established no policies or procedures to provide for the exercise of care and diligence to prevent the said Wayne Garrison from leaving the Hospital prior to the time of the Defendant, Hayden Donahue, being sure that the said Wayne Garrison had fully recovered from his propensity to murder and mutilate small children." Additionally, the plaintiff alleged that Dr. Donahue failed to establish policies and procedures to provide for the following of the dictates and directives of the Juvenile Court. We should note here that neither of the parties has questioned the power of the Juvenile Court to require institutions, such as the defendant institution, to notify the Court prior to releasing a juvenile entrusted to their custody.
As high-level government executives and officials must feel free to act on their discretional decisions as they see fit, without being subject to influence by the threat of harassing suit, such officials are generally accorded immunity from suit, as long as they are acting in good faith and not in a willful and wanton manner.[4] If such were not the case, the administration of government would be seriously impaired. Additionally, if, in a tort action, a court sought to pass judgment upon an administrator's decision, the court would be, in actuality, second-guessing the policy determinations of a coordinate branch of the government. Likewise, government administrators and officials are not liable for the negligence of their subordinates, as long as the administrator was not acting in a willful and wanton way, or acting in bad faith. In the case before us, no facts are alleged to *1131 show that Dr. Donahue was acting in bad faith or in a willful and wanton manner. Whether Dr. Donahue found it necessary to establish specific policies to deal with situations such as the one involving Wayne Garrison was a legitimate judgment call, apparently made in good faith  as the facts alleged do not show otherwise. Thus as the facts alleged against Dr. Donahue were not sufficient to show that he was acting in bad faith, or in a willful and wanton manner, we hold that Dr. Donahue was immune from suit  as the trial court held.

IV.
Plaintiff alleges that even if Dr. Donahue and Dr. Sullivan enjoyed immunity from suit by virtue of their positions as State officers and employees, they waived such immunity when they purchased professional liability insurance. In Lamont Independent School District # 1-95 of Grant County v. Swanson, 548 P.2d 215 (1976), we recognized that a sovereign may consent to be sued, or waive its of governmental immunity, and that a waiver of governmental immunity, may be implied, as well as expressed. We went on to hold that securing liability insurance is not an absolute waiver of governmental immunity, but is a waiver of governmental immunity to the extent of the insurance coverage. The plaintiff below argues that the purchase of professional liability insurance by Dr. Donahue and Dr. Sullivan constituted a waiver of any immunity from suit to the extent of the insurance coverage, just as the purchase of liability insurance by the State or subdivision of the State constitutes a waiver of its governmental immunity. We cannot agree with plaintiff's contention. The purchase of liability insurance by a professional employed by the State is not necessarily inconsistent with the employee's or officer's limited immunity from suit. The insurance may have been purchased for a number of reasons, none of which involving the relinquishment of their limited immunity from suit. For example, professional liability insurance could have been purchased in order to be protected when providing professional services not connected with employment by the State, or may have been purchased solely to absorb the cost of litigation if suit should be brought, even though the employee is immune. As the purchase of professional liability insurance by an individual is not necessarily inconsistent with any claim they might have to a limited immunity from suit, we cannot say that the acquiring of such insurance constitutes a waiver of any immunity which the party may possess. This being the case, we hold that neither Dr. Sullivan nor Dr. Donahue waived any immunity from suit that they may have possessed.
For the above stated reasons, we hold that the order of the trial court was correct in all aspects save its holding that it did not have jurisdiction over Dr. Sullivan by reason of plaintiff's having failed to state a cause of action against Dr. Sullivan.
ORDER OF THE TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART.
IRWIN, V.C.J., and WILLIAMS, SIMMS and HARGRAVE, JJ., concur.
OPALA, J., concurs by reason of stare decisis.
LAVENDER, C.J., and HODGES and DOOLIN, JJ., dissent.
NOTES
[1] E.g., State ex rel. Williamson v. Superior Court of Seminole County, Okl., 323 P.2d 979 (1958); Duncan v. State Highway Commission, Okl., 311 P.2d 203 (1957); and Mountcastle v. State, 193 Okl. 506, 145 P.2d 392 (1943).
[2] See Restatement of Torts 2d, Section 895D, Comment b, and Prosser, Law of Torts, 4th Ed., Section 132. Comment b to Section 895D of the Restatement of Torts 2d provides in part:

"The basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by fear of personal liability and vexatious suits. This, together with the manifest unfairness of placing any person in a position in which he is required to exercise his judgment and at the same time is held responsible according to the judgment of others, who may have no experience in the area and may be much less qualified than he to pass judgment in a discerning fashion or who may be acting largely on the basis of hindsight, has led to a general rule that tort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function."
[3] See Hazlett v. Board of County Com'rs, 168 Okl. 290, 32 P.2d 940 (1934).
[4] See Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and Comment d to Section 895D of the Restatement of the Law of Torts 2d.