Van Duoc NGUYEN, Personal Representative of the Estate of Dung Ngoc Nguyen, Appellant,

v.

STATE of Oklahoma, Appellee.

No. 71844.

Supreme Court of Oklahoma.

March 13, 1990.

Rex K. Travis, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Cathy Clinton Barnum, Asst. Atty. Gen., for appellee.

ALMA WILSON, Justice:

■ Today we address and resolve an issue of first impression. Is the State's decision to release a mental patient a discretionary function within the meaning of Oklahoma's Governmental Tort Claims Act, 51 O.S.Supp.1989, § 155(5),[1] resulting in immunity from liability for injuries subsequently caused by the mental patient? We hold that the decision to release a mental patient is not a discretionary function within the meaning of the discretionary exemption to Oklahoma's waiver of immunity.

This suit arises from the senseless killing of appellant's 18–year–old son committed by mental patient David Earl Hart. The appellant's amended petition alleges that on February 26, 1987, the State of Oklahoma, by and through Central Oklahoma Community Health Center, negligently released Hart to outpatient status even though he was known to have violent propensities. The petition further alleges that on July 10, 1987, Dung Ngoc Nguyen was selected at random, shot and killed by Hart. The trial court granted the State's motion to dismiss it as a defendant on the grounds that the decision to release a mental patient is a discretionary function[2] con-

---

1. 51 O.S.Supp.1989, § 155 provides in pertinent part:
   The state or a political subdivision shall not be liable if a loss or claim results from:
   \*    \*    \*    \*    \*    \*
   5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees....
   (1988 Okla.Sess.Laws, ch. 241, § 2.) Because the alleged negligent acts took place in February of 1987, the applicable amendment is found in 1986 Okla.Sess.Laws, ch. 66, § 1, but no changes have been made in the quoted portions of the statute since 1986.

2. The trial court cited as authority 43A O.S. § 7–101 (1986 Okla.Sess.Laws, ch. 35, § 2, 1986 Okla.Sess.Laws, ch. 103, § 103) which provides in pertinent part:
   C. In accordance with rules prescribed by the Commissioner, a person in charge may transfer a patient to an outpatient or other nonhospital status when, in the opinion of the person in charge, such transfer will not be detrimental to the public welfare or injurious to the patient and the necessary treatment may be continued on that basis; provided however, that before transferring the patient, the person in charge shall satisfy himself that appropriate financial resources and appropri-

cluding that the state was not liable for the act.[3]

■ The landmark case *Vanderpool v. State*, 672 P.2d 1153 (Okl.1983) abrogated the doctrine of governmental immunity and thus brought Oklahoma in conformity with the more equitable and prevailing view in our country. As noted in *Vanderpool* and again in *Griggs v. State*, 702 P.2d 1017 (Okl.1985), *Vanderpool* abrogated only the common law doctrine of sovereign immunity and left unaffected the power of the legislature to regulate governmental tort liability. In response to *Vanderpool* the legislature enacted the Governmental Tort Claims Act in 1985 (the Act).[4] The Act makes major policy statements by generally waiving immunity and removing the cloak protecting public funds from tort claim liability. 51 O.S.Supp.1989, § 152.1.[5] The general waiver is not an infinite blue sky. The scope of liability is limited in § 153 of the Act to torts committed within the scope of employment where private persons or entities would be liable under the laws of this state and is subject to other limitations and exceptions specified in the Act. Thirty carefully enumerated exemptions from liability are provided in 51 O.S.Supp.1989, § 155. Subparagraph five is the discretionary function exemption.

■ From the outset we note that the discretionary function exemption from governmental tort liability is extremely limited. *Robinson v. City of Bartlesville Bd. of Educ.*, 700 P.2d 1013 (Okl.1985). This is so because a broad interpretation would completely eradicate the government's general waiver of immunity. Almost all acts of government employees involve some element of choice and judgment and would thus result in immunity if the discretionary exemption is not narrowly construed.[6] Just as the waiver is not a blue sky of limitless liability, the discretionary exemption is not a black hole enveloping the waiver.

■ The courts are not agreed on whether the decision to release a mental patient falls within the discretionary function exemption.[7] The problem of distinguishing between discretionary and ministerial functions is riddled with policy considerations and has historically perplexed the courts resulting in diversity of opinion. The majority approach[8] under the Federal Tort Claims Act (FTCA)[9] and similar state acts is the planning-operational approach.[10] This approach is in accord with *Robinson*, at 1017. Under this approach initial policy level or planning decisions are considered discretionary and hence immune, whereas operational level decisions made in the per-

---

ate services are available to receive and care for such patient after his transfer.

**3.** The court cited as authority 51 O.S. § 155(5), see footnote 1.

**4.** 51 O.S.Supp.1989, §§ 151–172.

**5.** Title 51 O.S.Supp.1989, § 152.1 provides:
A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.
B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.

1984 Okla.Sess.Laws, ch. 226, § 3, eff. Oct. 1, 1985.

**6.** "In a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion." *Rogers v. State*, 51 Haw. 293, 459 P.2d 378, 381 (1969) (quoting *Swanson v. United States*, 229 F.Supp. 217, 219 (N.D.Cal.1964)).

**7.** Annot., 99 A.L.R.2d 1016 (1965).

**8.** Annot., 19 Am.Jur.2d *Proof of Facts*, 583 (1979).

**9.** Pursuant to 28 U.S.C. § 1346 (1982) the Federal Tort Claims Act states a general waiver of immunity and § 2680 of the FTCA provides for the discretionary function exception.

**10.** The planning operational approach was developed in *Dulehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) and has subsequently been followed by federal and state jurisdictions.

formance of policy are considered ministerial and not exempt from liability.

Under this approach, once a discretionary policy decision has been made, government employees have a duty to execute the policy on the operational level without negligence. Moreover, the general rule under the planning-operational test is that the discretion is exhausted by the initial adoption of policy, and that decisions to apply broad policy in specific cases are operational level decisions. Thus, under this approach the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decision.[11]

Following this approach, the court in *Lipari v. Sears, Roebuck & Co.*, 497 F.Supp. 185 (D.Neb.1980) held that the discretionary function exception to the FTCA did not bar suit against the United States when a patient receiving psychiatric care from the Veterans Administration was released from a V.A. mental institution, removed himself from psychiatric day care treatment, and subsequently injured the plaintiff and killed her husband when he fired a shotgun into a crowded Omaha night club dining room. The *Lipari* court explained that "[a]lthough a lawsuit may challenge a government official's exercise of judgment, this fact alone does not necessarily mean that the suit will be barred by the discretionary function exception...." *Lipari*, 497 F.Supp. at 195. The court reasoned that the discretionary function exception is "designed to bar tort litigation challenging governmental decisions which are founded on a balancing of competing policy consid-

erations" and that the decision to release the mental patient did not involve a balancing of policy considerations. *Lipari*, 497 F.Supp. at 195. Rather, the decision of the government-employed therapist to release a mental patient is:

... not different in kind from the decision which any therapist in private practice would have had to make in similar circumstances. Thus, the judgment of the United States' therapist can be readily assessed by the Court's use of the tort standard applicable to professional negligence. In applying the standard, the Court will not be reviewing the reasonableness of the V.A.'s policies, but will be only assessing the reasonableness of the therapist's evaluation of Cribbs. It is clear that "[t]he fact that judgments of government officials occur in areas requiring professional expert evaluation does not necessarily remove those judgments from the examination of courts by classifying them as discretionary functions under the act."

*Lipari*, 497 F.Supp. at 195. And as we stated in *Robinson*, 700 P.2d at 1017, the government on the operational level is required "to do the work with reasonable care and in a non-negligent manner."

The State of Washington has applied the *Lipari* court reasoning to its State Tort Claims Act in *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230 (1983). Pursuant to *Petersen*, 671 P.2d at 240, "[I]mmunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government." The facts[12] in *Petersen* graphical-

---

11. 19 Am.Jur.2d *Proof of Facts*, 583, 594–95 (1979).

12. In *Petersen*, the mental patient, Knox, was diagnosed by Dr. Miller, clinical director of a state hospital, as suffering from schizophrenic symptomatology as a result of an extensive history of drug abuse, in particular, angel dust. As a condition of probation, Knox was ordered to participate in mental health counseling and refrain from using controlled substances. Nevertheless, on April 16, 1977, Knox cut out his left testicle and was subsequently involuntarily detained at a state hospital where the staff reported delusional and hallucinogenic tendencies.

Twenty-two days after the self mutilation episode, Knox was permitted to visit his mother, but was required to return to the hospital that evening. However, "[t]hat evening Knox was apprehended by hospital security personnel while driving his car on the hospital grounds in a reckless fashion that involved spinning his car in circles. Nevertheless, Dr. Miller discharged Knox the following morning." Five days later Knox ran a red light while under the influence of drugs and injured Petersen. It is noteworthy that approximately six months subsequent to the Petersen accident, Knox killed Mr. and Mrs. H. and raped their daughter.

ly illustrate one of the overriding policy considerations affecting our decision today—public welfare and safety. We held in *Neal v. Donahue,* 611 P.2d 1125, 1128 (Okl.1980) "[p]rotection of the public from the harmful tendency of those incarcerated in state institutions is, we hold, a governmental function...." [13]

■ As we earlier noted there are thirty carefully enumerated exemptions from liability in § 155 of the Act. We note that the legislature exempted from liability injuries resulting from the "parole or escape of a prisoner by a prisoner to any other prisoner" [14] as well as injuries resulting from the "escape of a juvenile detainee, or injuries by a juvenile detainee to any other juvenile detainee." [15] It is our construction of the Act in its entirety that the legislature could but did not exempt the analogous situation of the release of a mental patient.[16] Rather, in its wisdom, the legislature exempted, "[a]cts or omissions done in conformance with then current recognized standards." 51 O.S.Supp.1989, § 155(28). Therefore, the question is not whether the release of a mental patient is a protected discretionary function but whether acts allegedly committed by those charged with the release of mental patients fall below current recognized professional standards. We are mindful of the fact that psychiatry is not an exact science and psychiatrists and/or therapists cannot predict with certainty the future acts of their patients. In other words no human behavior to our knowledge is predictable with crystal-ball certainty. Prophetic powers are not expected of professionals within the field of mental

health. Surely this is one of the reasons for the rule of law regarding conformity with the current recognized standard.

The state cannot exercise its judgment without due regard for the known facts and circumstances and have the advantage of immunity under our Act. Because this case is before us on a trial court dismissal the record does not disclose the facts and circumstances of Hart's release. We therefore reverse and remand this case to the trial court to determine whether the state acted within the then current recognized standards. Also, because we hold that the release of a mental patient is not a discretionary act within the meaning of the Tort Claims Act, *Powell v. State,* 770 P.2d 903 (Okl.Ct.App.1988) can no longer be considered persuasive authority and is hereby overruled.

REVERSED AND REMANDED.

OPALA, V.C.J., and DOOLIN, KAUGER and SUMMERS, JJ., concur.

LAVENDER, J., concurs in part, dissents in part.

HARGRAVE, C.J., and HODGES and SIMMS, JJ., dissent.

OPALA, Vice Chief Justice, concurring.

I write separately *to add* that the State's claim to sovereign immunity rests in this case on shaky ground. Its argument calls on the judiciary to divine the presence of a shield against tort liability from "a doubtful, ambiguous or silent legislative text." *Ingram v. The State of Oklahoma,* Okl., 786 P.2d 77, 80 [1990]. The immortal remnants of yesteryear's immunity *must now*

---

13. *Neal* was decided prior to Vanderpool's abrogation of common law doctrine of sovereign immunity and prior to the passage of the Oklahoma Tort Claims Act of 1985. Decided under the doctrine of sovereign immunity, the *Neal* court held that the government was not liable for the wrongful death of a three-year-old child committed by an institutionalized juvenile known for his homicidal propensities toward small children because governmental functions were immune. The *Neal* court noted that the government was immune from suit because none of the exceptions to immunity were present i.e. (1) the state has given its permission to be sued; (2) an express or implied waiver of immunity was present and; (3) the doctrine of

sovereign immunity was abrogated. The governmental proprietary function differentiation and inquiry was held to be no longer determinative in assessing liability for tort in *Vanderpool v. State,* 672 P.2d 1153 (Okla.1983). The 1985 Oklahoma Tort Claims Act also repudiates the doctrine in 51 O.S.Supp.1989, § 153.

14. 51 O.S.Supp.1989, § 155(23).

15. 51 O.S.Supp.1989, § 155(24).

16. Pursuant to *Jarvis v. City,* 669 P.2d 1108 (Okl. 1983) governmental immunity is only viable when *explicitly provided for in the Act.*

be anchored in a *clearly articulated* statutory exemption. *Jarvis v. City of Stillwater*, Okl., 669 P.2d 1108, 1111 [1983].