Anna REDDING, as guardian for the person and estate of Mark Allen Redding, Appellant,

v.

The STATE of Oklahoma, and the Director of the Department of Corrections for the State of Oklahoma, in his official capacity, and the Warden of the Jackie R. Brannon Correctional Center, and John H. Marsh, individually and in his official capacity, and Jon Tillinghast, individually and in his official capacity, Appellees.

Nos. 72024, 73702.

Supreme Court of Oklahoma.

Sept. 20, 1994.

As Corrected Dec. 6, 1994.

See also, 750 F.Supp. 473.

Mark E. Hammons, Oklahoma City, for appellant.

Cathy Clinton Dabney, Asst. Atty. Gen., Oklahoma City, for appellees.

SIMMS, Justice:

Certiorari has been granted in these companion cases to address the following issues: (1) Whether the State of Oklahoma is exempt under the Governmental Tort Claims Act, 51 O.S.Supp.1987, § 155(23) from tort liability for claims involving medical care and attention furnished to a prisoner by physicians employed by the Department of Corrections, and (2) Whether the Court of Appeals erred in holding the provisions of the Governmental Tort Claims Act conflict with 57 O.S.1981 § 553 and repeal that section by implication.

The facts of both cases center on serious injuries suffered by an inmate, Mark Allen Redding, when he was struck in the head by a softball during a prison softball game. His mother and guardian, Mrs. Anna Redding (Guardian) brought action against the State of Oklahoma, Department of Corrections, the Warden and two medical doctors who attended him in their capacity as employees of the Department. Guardian sought damages under the Civil Rights Act, 42 U.S.C. § 1983, and the Oklahoma Governmental Tort Claims Act, 51 O.S.1985 Supp. § 151, et seq., claiming that the failure to provide the inmate timely medical treatment amounted to a violation of his constitutional rights and resulted in his serious physical injuries.

Guardian sued the defendant doctors individually and in their official capacities. She claimed that they had secured private insurance and had thereby waived any claims of immunity under the Governmental Tort Claims Act. Guardian voluntarily dismissed the § 1983 actions against the physicians in their individual capacities. The trial court dismissed all other claims against the state and the individuals, holding the state was not a "person" under 42 U.S.C. § 1983 and that under the Governmental Tort Claims Act, 51 O.S.Supp.1987 § 155(23), providing medical care to inmates was specifically exempt from liability. The individuals in their official capacities were dismissed from the § 1983 claim and also from action under the Governmental Tort Claims Act, as they were held immune from suit under § 155(23). Appeal number 72,024 resulted.

The Court of Appeals affirmed the trial court's ruling in favor of the State as to the § 1983 claims and in favor of the individual defendants as to both the § 1983 claims and the Tort Claims Act. The Court of Appeals, however, reversed the trial court's dismissal of the state under the Tort Claims Act, 51 O.S.Supp.1985 § 155(23), holding that it did not extend immunity for alleged negligent failure to provide medical attention and care to a prisoner. That provision states:

"§ 155. The state or a political subdivision shall not be liable if a loss or claim results from:

*     *     *     *     *     *

23. Provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or by a prisoner to any other prisoner;"

The Court of Appeals found the issue raised was whether the state and its employees fell within the exemption from liability extended under 51 O.S.1987 § 155(28), in which the legislature exempted "acts or omis-

sions done in conformance with their current recognized standards," and that this determination is a fact issue which could not be decided in a motion to dismiss. The Court of Appeals based its decision on *Nguyen v. State of Oklahoma*, Okl., 788 P.2d 962 (1990), where this Court held that the decision to release a mental patient to outpatient status was not a discretionary act within the contemplation of 51 O.S.Supp.1988 § 155(5), which would exempt the state from liability. The Court there found that the legislature could have, but did not, exempt that mental health decision as it had exempted other specific acts; noting particularly that liability from injuries resulting from what we held to be analogous situations of the parole or escape of prisoners and juvenile detainees were exempted, whereas the psychiatric decision to release a mental patient was not specifically provided immunity in the Tort Claims Act. The *Nguyen* Court found that in 51 O.S.1987 § 155(28), the legislature specifically exempted "acts or omissions done in conformance with currently recognized standards," and found the question then was not whether the release of a mental patient was a protected discretionary function, but whether the acts of those in charge of releasing patients fell below currently recognized professional standards under § 155(28).

The State argues on certiorari that § 155(23) plainly exempts the state from liability for claims for injuries resulting from providing medical treatment to a prisoner, and that the Court of Appeals was mistaken in stating otherwise and in applying *Nguyen v. State*, supra, to these facts. The State contends that the provision of medical care and attention to prisoners is as much an integral part of the operation of a prison as is the provision of food, essentials of daily care and security. The State points out that all these services must be provided within the context of operating a prison system where the overriding consideration is the protection of the public, and argues that it must be seen as acting first and foremost as an operator of a prison, not merely as a provider of medical care to prisoners. Section 155(23), the State argues, is the legislature's recognition of this

paramount policy concern of protection of the public safety and welfare, because it exempts from liability all activities and functions of the Department in operating the penal system.

We recently upheld the Department's view that the legislative intent of § 155(23) is to protect the state from liability for loss resulting from any and all actions of officers and employees of a penal institution. In *Medina v. State of Oklahoma*, Okl., 871 P.2d 1379 (1994), we were asked to determine whether dispensing medicine to an inmate by a state employee came within the exemption of 51 O.S.Supp.1989 § 155(23).[1] There we rejected arguments that questions of liability arising from the operation of a prison must be determined by principles set forth in *Nguyen*, and dismissed plaintiff's discretionary function argument advanced to tie the prison situation to a *Nguyen* analysis. We found instead that the plain language of § 155(23) includes the myriad of actions involved in the day to day operation of a prison, and that the obvious purpose and intent of that provision is to shield the state from tort liability for loss resulting from functions of officers and employees performed in the operation of a penal institution. We therefore held dispensing medicine to an inmate to be a function exempt from liability under § 155(23).

*Medina* is determinative of the issue before us here. The state is immune from tort liability for loss as allegedly occurring to a prisoner from the provision of medical care under § 155(23).

Inasmuch as Guardian had voluntarily dismissed all claims for liability of the physicians in their individual capacities before the trial court, no issues concerning that question remained for decision by the Court of Appeals. To the extent that its opinion could be seen as reaching that issue, it was merely advisory.

The Court of Appeals decision is vacated. The judgment of the trial court in case number 72,024 is affirmed in all respects.

Approximately five months after the trial court entered judgment in favor of the State and individual defendants, Guardian filed a

1. Relevant provisions are identical to 51 O.S.Supp.1987 § 155(23).

petition for new trial alleging the state had obtained its dismissal by fraud and misrepresentation. Guardian contended that although the State had represented that no liability insurance policy covering the claims was in effect, such a policy had been found to exist and that it constituted newly discovered evidence which could not, with due diligence, have been discovered earlier. The trial court denied the petition, holding that the policies in question were individual liability policies covering only the physicians which were purchased by the Department of Corrections as an inducement for the professionals to work for the agency and were merely additional compensation. The trial court found that the existence of the policies was immaterial to its original ruling dismissing the action as barred by sovereign immunity, as they did not cover the agency or the state and their purchase was not intended to constitute, and did not constitute, a waiver of the state's immunity under § 155(23).

This ruling gave rise to appeal No. 73,702 wherein Guardian relied on *Nichols v. Department of Corrections*, Okl., 631 P.2d 746 (1981) and 57 O.S.1981 § 553, in support of her position that by purchasing the professional liability insurance policies for the individual doctors, the State waived its immunity.

The Court of Appeals affirmed the trial court's denial of the new trial. It found that Guardian's reliance on *Nichols* was without merit, but held 57 O.S.1981 § 553 had been repealed by implication by the subsequent enactment of the Governmental Tort Claims Act, particularly the exclusivity provision of 51 O.S.Supp.1985 § 153(B).

Because we find the facts of this case do not put the statutory provisions in conflict, we vacate the Court of Appeals opinion, but affirm the trial court's ruling denying a new trial.

▮ Section 553 provides:

"A. The Oklahoma Board of Corrections may provide an insurance policy or bond to indemnify from personal civil liability each member of the Board of Corrections and any officer or employee of the Department whom the Board may deem necessary to so insure. The insurance policy or bond shall be in the sum of not less than One Hundred Thousand Dollars ($100,000.00) for each Board member, officer or employee insured or bonded and shall indemnify each such person from personal civil liability for acts performed while discharging or attempting to discharge his official duties. "B. The governmental immunity to tort action of the Department of Corrections of this state shall be waived to the extent of the amount of insurance or bond authorized and required herein, but in no case shall such immunity be waived in excess of the coverage, force or effect of such insurance or bond. To the extent that an insurer or bondsman has provided indemnity for the said individuals for acts proximately caused by the negligence of such employee the said insurer or bondsman may not, in an action, claim the governmental immunity of the state as a defense. No judgment shall be rendered in excess of the maximum amount of applicable insurance or bond authorized by this act."

The insurance contemplated by § 553 as a condition which would constitute a waiver of sovereign immunity is a policy of indemnity coverage, not professional liability insurance such as was involved here.

In § 553, supra, the legislature obviously intended to protect the Board and its officers and employees from civil rights suits brought against them for acts performed in the course of their employment. The facts underlying *Nichols*, upon which Guardian relies, reveal that it was based on such a suit, as plaintiff there brought an action under 42 U.S.C. § 1983 for civil rights violations suffered by a prisoner.

Speaking to the difference between an indemnity policy and a liability policy such as that at issue here, the Court in *Tri–State Casualty Ins. Co. v. Stekoll*, 201 Okl. 548, 208 P.2d 545, 549 (1949) stated:

"The general rule as regards a contract of indemnity is stated in 29 Am.Jur., Insurance, section 1061, as follows: 'The question has frequently arisen whether a contract of insurance protecting the insured against losses due to injuring the property or person of a third person is one of liabili-

ty or indemnity. The general distinction between the two kinds of insurance is that if the policy is one against liability, the coverage thereunder attaches when the liability attaches, regardless of actual loss at the time; but if the policy is one of indemnity only, an action against the insurer does not lie until an actual loss in the discharge of the liability is sustained by the insured. In general, the class into which a particular policy falls depends upon the intention of the parties. * * * '."

The conditions for indemnification of an employee by the state or political subdivision for a judgment entered "for a violation of property rights or any rights, privileges or immunities secured by the Constitution or laws of the United States", and the prerequisites necessary for enforcement of indemnification procedure are set forth in 51 O.S.Supp.1987 § 162.

It is axiomatic that only an irreconcilable conflict between statutes will give rise to a repeal by implication. Such repeals are not favored and all statutory provisions must be given effect unless an irreconcilable conflict is demonstrated. See, *City of Sand Springs v. Dept. of Public Welfare*, Okl., 608 P.2d 1139 (1980). These facts do not present a conflict between the statutory provisions.

Section 553, upon which Guardian relies, is concerned only with indemnity insurance and is not relevant to the purchase of these professional liability policies obtained as additional compensation for the physician employees. See *Neal v. Donahue*, Okl., 611 P.2d 1125 (1980). Neither is Guardian's reliance on *Nichols v. Department of Corrections*, supra, well founded. *Nichols* was decided prior to the enactment of the Governmental Tort Claims Act and offers no authority here. Additionally, the individual doctors were voluntarily dismissed by Guardian in the action below.

The State is immune from liability and did not waive its sovereign immunity by purchasing the policies. 51 O.S.Supp.1987 §§ 151, et seq. We find that the trial court, therefore, properly denied the petition for new trial.

In appeal No. 73,702, the decision of the Court of Appeals is vacated and the Judgment of the trial court is Affirmed.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

OPALA and SUMMERS, JJ., concur in part, dissent in part.

WATT, J., concurs in result.