408 P.2d 335 (1965)
In the Matter of the Death of Billy C. KROTH.
Delores KROTH, Administratrix, Petitioner,
v.
OKLAHOMA STATE PENITENTIARY, State Industrial Fund, and the State Industrial Court, Respondents.
No. 40940.
Supreme Court of Oklahoma.
November 9, 1965.
Stubbs, Maynard & Nixon, and Thad Klutts, Oklahoma City, for petitioner.
Guy A. Secor, Mont R. Powell, Sam Hill, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.
*336 IRWIN, Justice.
On May 21, 1963, Dolores Kroth, claimant, filed a claim before the State Industrial Court for death benefits under the provisions of the Workmen's Compensation Act against Oklahoma State Penitentiary, Oklahoma Board of Affairs and the State Insurance Fund. Claimant alleged that on April 3, 1963, Billy C. Kroth, her husband, sustained an accidental injury while in the employment of the Oklahoma State Board of Affairs, which resulted in his instant death.
On January 16, 1964, a trial judge of the Industrial Court entered an order, the pertinent parts being as follows:
"The Deceased, Billy C. Kroth, on December 7, 1962, was received at the Oklahoma State Penitentiary as an inmate for the crime of grand larceny from Carter County, Oklahoma, where he remained in such capacity until April 3, 1963, the date of his death; that on April 3, 1963, said Deceased was an inmate performing certain duties and activities in accordance with regulations of the Oklahoma State Board of Affairs and the Oklahoma State Penitentiary at McLeod Honor Farm, Farris, Oklahoma; that on said date he incurred an accidental personal injury which resulted in his death.
"That the Deceased, Billy C. Kroth, was not an employee of the State of Oklahoma or the Oklahoma State Penitentiary within the meaning of the Workmen's Compensation Law of the State of Oklahoma, and, therefore, claimant's claim for Death Benefits under the Workmen's Compensation Act is denied.
"The Court further finds that the Oklahoma State Penitentiary did not pay wages to the said Deceased; that no wages to said Deceased were ever reported by said Penitentiary to the State Insurance Fund and said Penitentiary did not pay any Premium on any purported wages, and the State Insurance Fund did not receive or accept any Premium on any purported wages."
The above order was affirmed on appeal to the Industrial Court en banc and claimant brought this original proceeding for review of the order denying an award.
Decedent, at the time of his death, was assigned as a trusty to the McLeod Honor Farm which is owned and operated by the State of Oklahoma. He worked as a mechanic and at the time of his death he was performing convict labor under the supervision and control of the State.
The evidence showed that many inmates of the Oklahoma State Penitentiary are paid bonuses each month in the form of script or coupons which can be used to purchase personal items at the prison canteen. The heads of the various departments determine whether an inmate receives a bonus, and the amount thereof. The bonuses vary from $1.00 to $5.00 per month. An inmate does not have to be a trusty to receive a bonus, nor does he have to work. The granting of the bonus, regardless of an inmate's status, is discretionary with each department head.
The bonus, in the form of script or coupons, may be used for purchases at the canteen, or may be deposited to the inmate's *337 account at the prison. An inmate may send the accumulated funds home, and upon discharge from the prison, any accumulated funds or savings are given to him in the form of cash.
The bonuses come from the profits on the sale of articles in the prison canteens, sale of rodeo tickets and books. The State of Oklahoma does not appropriate any money to this fund.
The record in this case shows that the deceased received a $2.00 bonus for the months of February and March and would have been entitled to the bonus for the month of April, had he not been killed.
Claimant contends that the deceased was an employee at the time of his death. To sustain this contention, claimant cites Title 57 O.S. 1961, §§ 140 and 141. Section 140 provides:
"The State Board of Public Affairs shall have the authority to allow any prisoner a reasonable amount of compensation after he has performed his daily task, if such prisoner desires to avail himself of such opportunity."
Section 141, supra, is permissive legislation for compensation for work and labor when the State Penitentiary and State Reformatory may become self-sustaining.
The above statutory provisions are not helpful to claimant's cause. Decedent's injury and resulting death occurred while he was performing his daily task and not after he had performed them; and it could not be seriously argued that the State Penitentiary is self-sustaining. Although claimant cites the above statutory provisions in connection with other cases, she does not point out how the above provisions are applicable.
We will now consider the cases relied on by claimant. In California Highway Commission, etc. v. Industrial Accident Commission, 200 Cal. 44, 251 P. 808, 49 A.L.R. 1377, an award to an inmate was sustained on the theory that the relationship of master and servant existed between the highway commission and claimant by reason of the "Convict Road Camp Bill", adopted in 1923, providing for the payment by the commission to convicts for services performed by them on state highways. The California Court determined that the 1923 Convict Road Camp Bill enactment restored to the convict assigned to work upon the public highways such limited civil rights as are necessary to create the relation of master and servant. The case of Town of Germantown v. Industrial Commission, 178 Wis. 642, 190 N.W. 448, 31 A.L.R. 1284, involved a claimant who was injured while working out a highway tax. In that case the court said the claimant owed the obligation and had his choice to pay in cash or in labor. In Johnson v. Industrial Commission, 88 Ariz. 354, 356 P.2d 1021, the Supreme Court of Arizona said that "* * * the case presents the single question of whether a county prisoner, injured while on loan to a private corporation, is an employee within the meaning of the Workmen's Compensation Act * * * and entitled to compensation for injuries sustained during the time he was so employed." In setting aside an order denying an award against the private corporation, the court found that claimant was at all times under the control of the private corporation which had the right to direct the manner in which the service was to be performed and the right to terminate claimant's services; and that there was nothing in the record to indicate that claimant was under compulsion to perform the services.
An examination of the above case, however, will disclose that it does not support claimant's theory as the Arizona Supreme Court said that the respondent, the private corporation,
"* * * cites several cases in other jurisdictions where an injured prisoner was held not to be within the applicable Workmen's Compensation Act. After carefully reviewing each case we are of the opinion that all are readily distinguishable. In all of the cases cited to the court by respondent *338 the injured prisoner was working on a prison project under constant supervision of law enforcement officials. Furthermore, in no instance was the injured prisoner working on a private project carried on by a private corporation.
"The only case found dealing with the loaning of prisoners to a private corporation is Taylor v. Arkansas Light & Power Co., 173 Ark. 868, 293 S.W. 1007, cited by petitioner. There the State of Arkansas had contracted to provide prisoners on a power project. A warden was sent along to supply constant supervision. All work was done at the express direction of the warden and all necessities were provided by the State. The court held that a death suffered on the job was not compensable, relying mainly on the fact that the warden was in charge. * *."
All of the cases cited and relied on by claimant are clearly distinguishable and are not controlling in the case at bar. In the instant proceeding, limited civil rights had not been restored to decedent by virtue of his job; he was not working out a cash obligation owing to the State; he was not doing work for a private corporation; but he was under the supervision of the State and was performing convict labor under the supervision and direction of the State.
Although the record shows that decedent received certain bonuses, in the form of script or coupons, this fact does not alter the basic issue presented, which is:
"Is a convict who is incarcerated in the State Penitentiary included in or subject to the terms and provisions of the Workmen's Compensation Act?"
Title 85 O.S. 1961, § 2, provides:
"Compensation provided for in this Act shall be payable for injuries sustained by employees engaged in the following hazardous employments, to wit: * * * all state employees working as guards, attendants, and all other persons engaged in hazardous employment at state penitentiaries and reformatories, * * *".
Since a convict incarcerated in the State Penitentiary is not a state employee working as a guard or attendant, in order for such convict to be covered by the Workmen's Compensation Act, he would necessarily have to be covered by the language "* * * and all other persons engaged in hazardous employment at state penitentiaries and reformatories, * * *".
It has been held repeatedly by this Court that the relationship of employer and employee must exist as a prerequisite for an award under the Workmen's Compensation Law. See, Anderson v. Dukes, 193 Okl. 395, 143 P.2d 800; Landrum v. Ownby, Okl., 290 P.2d 400; Cravatt v. City of Oklahoma City, Okl., 295 P.2d 807.
Title 85 O.S. 1961, § 3, defines an employer as "a person, partnership, * * * employing workmen in hazardous employment, and shall include the State, * * * when engaged in any hazardous work within the meaning of this Act in which workmen are employed for wages; * * *."
Paragraph (8) of Sec. 3, supra, provides that wages mean "the money rate at which the service rendered is recompensed under contract of hiring * * *."
In Murray County v. Hood, 163 Okl. 167, 21 P.2d 754, we held:
"A county convict, engaged in the performance of work for the county during the term of his imprisonment as such, is not an employee of such county within the terms of the Workmen's Compensation Act of this state, and an injury sustained in the performance of such work is not compensable under the provisions of said act."
In the instant action it could not be said that decedent was an employee of the State of Oklahoma, or was performing work under contract, written or implied, when he sustained the fatal accidental injury. His services were at the disposal of the State while serving his prison term and the $2.00 in script of bonuses he received each month *339 could not possibly be construed as "wages" as that term is employed in the Workmen's Compensation Act. Decedent was not "hired" to do the work he was doing, but was performing convict labor as a convict by operation of law and not by contract.
We therefore hold that decedent at the time of his death, was not covered by the terms of the Workmen's Compensation Act. Since decedent did not come within its provisions, no recovery can be had for death benefits.
In view of our holding herein, it is unnecessary to consider or determine claimant's contention that the trial tribunal's order should be vacated because there was no finding of fact as to the hazardous employment of the decedent at the time of his death.
The order denying the award is sustained.