**Thomas D. HORTON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. 81762.

Supreme Court of Oklahoma.

Jan. 23, 1996.

Rehearing Denied May 3, 1996.

Kent F. Frates, Laura Haag McConnell and Melanie J. Jester, Oklahoma City, for Appellant,

Susan B. Loving, Attorney General of Oklahoma and W. Craig Sutter, Assistant Attorney General, Oklahoma City, for Appellee.

WATT, Justice.

### FACTS

On February 7, 1991, plaintiff, Thomas D. Horton, was an inmate in the custody of the Oklahoma Department of Corrections. He was working at Lake Murray State Park in a Department of Corrections approved work release program. Horton's supervisor took Horton and other inmates from the cabins where they had been working to the vicinity of a restaurant on the park grounds to fight a grass fire. Horton, with several other inmates and State employees, boarded a truck equipped with a 250 gallon water tank, water pump, and a hose. Charles Treadwell, a Department of Tourism employee, drove the truck. Horton jumped from the truck into the burning grass as Treadwell was driving through the flames to get to the up-wind side of the fire, where the inmates and other employees were to fight the fire. Horton was seriously burned.

### PROCEDURAL HISTORY

Horton brought suit against the State, claiming that Treadwell was negligent in his

operation of the truck, and that the State had negligently failed either to train Horton in fire fighting procedures or furnish to him adequate equipment for fire fighting. The State moved for summary judgment on the ground that it was exempt from liability under the Governmental Tort Claims Act, 51 O.S.1991 §§ 151, et seq. The State claimed that it was immune from liability (1) under 51 O.S.Supp.1994 § 155 subd. 22 because Horton was participating in a Department of Corrections approved work release program and (2) under 51 O.S.Supp.1994 § 155 subd. 6 because Horton's injuries arose as part of the State's effort to provide fire protection.[1]

The trial court held, and the Court of Appeals affirmed, that the State was immune under § 155 subd. 6, but neither court discussed the applicability of § 155 subd. 22. While we agree with the result reached, under our view § 155 subd. 22 determines this matter's outcome. Consequently, we granted certiorari on January 11, 1995.

## ISSUE

Did the trial court correctly hold that the State was immune from liability to Horton?

We answer yes.

1. Although the 1988 version of § 155 of the Governmental Tort Claims Act was in effect when Horton was injured, in this opinion we will refer to its current, 1994, version because in ways material to this appeal the substance of the Act is unchanged from its 1988 version.

The portions of 51 O.S.Supp.1994 § 155 relevant to this appeal provide:

The state or a political subdivision shall not be liable if a loss or claim results from:

6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection;

22. Any court ordered or Department of Corrections approved work release program; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections;

24. Provision, equipping, operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of

## DISCUSSION

The State of Oklahoma has adopted the doctrine of sovereign immunity. 51 O.S.1991 § 152.1.[2] The State is expressly exempted from liability that falls within one of the specific exemptions from liability enumerated in 51 O.S.Supp.1994 § 155. Consequently, if Horton falls within one of the enumerated exemptions in § 155, the State is immune from liability to him.

Horton does not dispute that he was at the scene of his injury because of his participation in a Department of Corrections approved work release program, governed by the Prisoners Public Works Act, 57 O.S.1991 §§ 215, et seq. Prisoners who participate in the program are granted credit against their sentences for having done so, 57 O.S.Supp. 1994 § 138.

The State contended that Horton's suit was barred by § 155 subd. 22, supra, note 1. Horton resisted the State's contention on the ground that "firefighting was not within the activities assigned to Horton as part of the work release program."

We have not previously interpreted § 155 subd. 22, supra, note 1, but we recently considered facts similar to those presented here

a prisoner or injuries by a prisoner to any other prisoner; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections;

2. 51 O.S.1991 § 152.1 provides:

A. The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.

B. The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions. In so waiving immunity, it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.

in *Purvey v. State*, 905 P.2d 770 (Okla.1995), in interpreting § 155 subd. 24, *supra*, note 1. In *Purvey* we held that the State was immune from an inmate's action for injuries received while she was working on a work detail to clear land for use by the Department of Public Safety. The inmate was injured when she was cut by a chain saw another inmate was using. She claimed that prison officials had been negligent in issuing chain saws to untrained inmates. She also claimed that the State was liable because she was injured while working on a project for another state institution, not while working for the benefit of the Department of Corrections. We rejected the inmate's contention on the ground that § 155 subd. 24 protects the State from liability for *all* actions involved in operating a penal institution.

■ *Purvey* is the latest in a line of recent opinions in which we have held that the State is immune from tort liability to inmates under § 155 subd. 24 for the infinite numbers of activities that are involved in prison operations: *Medina v. State*, 871 P.2d 1379 (Okla. 1993); *Redding v. State*, 882 P.2d 61 (Okla. 1994); *State ex rel., Oklahoma Department of Corrections v. Burris*, 894 P.2d 1122 (Okla. 1995). Section 155 subd. 22 specifically applies to this situation as Horton was working in a "Department of Corrections approved work release program." *Id.* There is nothing in the language of § 155 subd. 22 that makes its ambit narrower than that of § 155 subd. 24. Thus, we conclude that § 155 subd. 22 must be interpreted with respect to work release inmates as we have interpreted § 155 subd. 24 with respect to inmates generally.

Horton claims that § 155 subd. 22 should not apply because firefighting was not part of his work release duties and because the negligence of Charles Treadwell, a Department of Tourism employee, contributed to Horton's injuries. We disagree.

■ The State is exempt from injuries resulting from "*Any* ... work release program." [Emphasis added.] 51 O.S.Supp. 1994 § 155 subd. 22. Under the Prisoners Public Works Act, 57 O.S.1991 §§ 215, et seq, inmate labor may be used on any public agency's public works project. 57 O.S.1991 § 218. ("The Department of Corrections may contract with any requesting public agency to provide inmate labor for public works projects.") Clearly, the Legislature contemplated that work release inmates would work with other State employees as part of their duties. Thus, if the Legislature had intended that the State should be liable for inmate injuries contributed to by State employees who were not Department of Corrections employees, we conclude that it would have said so.

Because Horton was injured while working as a work release inmate the State is immune from liability to him arising from his injuries under 51 O.S.Supp.1994 § 155 subd. 22. Under the teaching of *Purvey, Medina, Redding*, and *Burris*, we hold that the trial court correctly granted summary judgment to the State. Because we conclude that the state is immune from liability to Horton under § 155 subd. 22, we need not consider in this opinion whether § 155 subd. 6 would have applied to the facts presented here.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**

HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting, with whom WILSON, C.J., and KAUGER, V.C.J., and LAVENDER, J., join.

The trial court granted the State's motion for summary judgment, finding immunity under 51 O.S.1991 § 155(6)—method of providing fire protection. Plaintiff appealed and the State in its brief urged the correctness of the trial court's application of § 155(6)—method of providing fire protection. The Court of Appeals affirmed, relying on § 155(6)—it was the State's method of providing fire protection. Plaintiff sought certiorari and the State responded, arguing the State was doing nothing but providing fire protection.

Today is the first time a court of this state has applied to the facts of this case 51 O.S. 1991 § 155(22), the subdivision granting state immunity for any "Department of Corrections approved work release program." The Court, on its own motion, finds immunity from suit in District Court [1] in those words of that statute. Let us review the facts.

Thomas Horton was painting a cabin that day in Lake Murray State Park under a prisoner work release program. At no time prior to then had his assignments ever included firefighting, nor had he or the other inmates in the program ever received any firefighting training.

A grass fire broke out in the Park. Trained, municipal firefighters were summoned and had arrived on the scene. Horton's work supervisor took him and his work crew to a site near the fire, where they were given shovels and toe sacks and told to help put it out. A flatbed truck driven by a State Tourism employee (not a firefighter) pulled up for them, and the inmates jumped on board. Neither Horton nor the other inmates had any protective gear for firefighting. The truck then drove into the grass fire, the driver's idea being to get to the other side of the flames. Horton, perhaps in a panic, perhaps in a reasoned decision not to be on the truck when the gas tank exploded, jumped off and ran.[2] In the process he was seriously burned. He sued the State, alleging negligence on the part of the Tourism employee. The State wins without a trial.

Are we, then, to take it from this Court that the Department of Corrections of this State approved a work release program which was to impress into firefighting duty inmates who have had no firefighting training, who have been furnished no fire-protective equipment, and who are told to get on a truck which promptly drives into the fire? I doubt we could find a DOC representative who would confess to "approval" of that sort of work release program. The Eighth Amendment would come to mind.[3] The implications would be vast, especially in a nation widely regarded as the leader in protection of human rights.

The Plaintiff's brief before the Court of Appeals used the dictionary to define "method" as a *systematic procedure* for attaining an objective, the issue being whether this bizarre episode was the state's "method" of providing fire protection. He argued by way of example, that if fire broke out in the classroom, and the teacher, instead of shepherding the first graders to safety, instructed them to fight the fire with their coats, that probably would not have amounted to the school district's *method* of providing fire protection. His argument finds support in *State v. Terrell*, 588 S.W.2d 784 (Tex.1979), and *Jackson v. Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984).

His analogy applies well to the thought that this incident was part of a Department-approved work release program. Absent express testimony that it was so approved I would neither assume nor infer Departmental approval. I would consider this episode an adventuristic aberration, just as it would have been had the teacher fought the fire with her first graders. I would not find immunity for the State in either § 155(6) or (22), but would let a jury determine who should be accountable for Horton's burns.

---

1. Department of Corrections inmates are not "employees", and thus do not have access to the Workers' Compensation Court when they are injured on their jobs. *In re Kroth,* 408 P.2d 335 (Okla.1965); *Clinton v. Crow,* 488 P.2d 1232 (Okla.1971).

2. As far as we can tell the gas tank did not explode.

3. The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishments.