**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRIAN CROUCH; REBECCA
CROUCH, individually
and as parents of M.C., a minor,

       Plaintiffs – Appellants,

v.

ROBERTA LLYN DALEY, P.A.,

       Defendant – Appellee,

and

HARPER COUNTY COMMUNITY
HOSPITAL; NEAL KENT SUTHERS,
M.D.; HUDSON-SUTHERS CLINIC;
TONYA ANN MCCLARY, R.N.; JADE
ERIN BRADY, R.N.; JEQUITA D.
SNYDER, D.O.,

       Defendants.

No. 13-6219
(D.C. No. 5:11-Cv-00824-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **BRISCOE**, Chief Judge, **BALDOCK** and **MATHESON**, Circuit Judges.

This is an appeal from a grant of summary judgment in a diversity suit. Plaintiffs Brian and Rebecca Crouch's daughter, M.C., was born with severe intellectual disabilities. Believing the delivery hospital and attending medical personnel were responsible for M.C.'s condition at birth, Plaintiffs brought this medical-negligence action against them. The only question presented to us in this appeal is whether the district court correctly granted summary judgment to Defendant Roberta Llyn Daley, a physician assistant who aided in delivering Plaintiffs' daughter. The district court determined that Defendant was acting within the scope of her employment as an employee of a political subdivision at the time of M.C.'s birth at Harper County Community Hospital (HCCH or "the hospital") in the rural community of Buffalo, Oklahoma. Based on this finding, the district court held Defendant was entitled to immunity from tort liability under the provisions of the Oklahoma Governmental Tort Claims Act (OGTCA), Okla. Stat. tit. 51, §§ 151–200. Plaintiffs appealed, arguing that Defendant did not fall within the reach of the OGTCA's protection and, further, that any governmental immunity she might otherwise enjoy was waived due to her liability-insurance coverage. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Ms. Crouch began to go into labor with M.C. in the early morning hours of August 2, 2009 and was admitted to HCCH by her obstetrician and gynecologist, Dr. Neal Suthers, M.D. Defendant, who worked as a physician assistant for Dr. Suthers, was called to the hospital to assist with the delivery. During her pregnancy with M.C., Ms. Crouch had received prenatal care from both Defendant and Dr. Suthers at the Hudson–Suthers Clinic, a private medical clinic operated by Dr. Suthers in the town of Buffalo. But, when the time came to deliver M.C., Ms. Crouch went to HCCH. In this case, Plaintiffs do not suggest that Ms. Crouch's prenatal care at the Hudson–Suthers Clinic was substandard; all of the negligent acts alleged in this case took place while she was in labor at HCCH on August 2, 2009.

Defendant held two jobs as a healthcare provider in Buffalo. She worked as a physician assistant at Dr. Suthers's private clinic, but she also had duties at HCCH, the local hospital serving the residents of Harper County, Oklahoma. Although Dr. Suthers had staff privileges at HCCH, he was not a hospital employee. For her part, Defendant was responsible not only for assisting Dr. Suthers as his employee in a private capacity. She was also tasked with giving medical care to patients at HCCH, as needed. See Appellants' App. at 83 (deposition testimony of Defendant that "[t]here was a call schedule for the emergency room. . . . And there was an expectation that . . . we round on any patients that were there").

At some point while Ms. Crouch was in labor, Dr. Suthers left the hospital building to attend to other obligations. Defendant, along with other hospital staff, continued to provide medical care to Ms. Crouch in the delivery room during Dr.

Suthers's absence. Eventually, Dr. Jequita Snyder, D.O., who was covering for Dr. Suthers that day, arrived at HCCH and delivered M.C. that evening. It quickly became apparent that M.C. was suffering from birth complications, and she was transferred to the Children's Hospital in Oklahoma City to receive intensive neonatal care. M.C. was diagnosed with hypoxic ischemic encephalopathy, "a catastrophic neurological injury" caused by oxygen deprivation during birth. Id. at 37.

Plaintiffs, who are citizens of Kansas, brought this action in federal district court in Oklahoma as a diversity suit arising under 28 U.S.C. § 1332. Complete diversity exists among the parties. In their complaint, Plaintiffs alleged that Defendant—as well as HCCH, Drs. Suthers and Snyder, and other medical staff at HCCH—had been negligent in providing adequate medical care during M.C.'s delivery. Plaintiffs claimed that all of the defendants should have recognized that serious complications were arising during Ms. Crouch's labor and, had they done so, they would have then taken the steps necessary to prevent M.C.'s serious injuries. In addition, Plaintiffs sought damages for the mental and emotional distress, loss of companionship, and damage to the family relationship engendered by M.C.'s condition of permanent disability.

Defendant moved for summary judgment. She argued that because she was working as an HCCH employee while attending to Ms. Crouch's labor and delivery, she was immune from tort liability under the OGTCA. The district court first determined that HCCH—as a public hospital operating for the benefit of Harper County, Oklahoma—was

-4-

a "political subdivision" of the State of Oklahoma within the meaning of the OGTCA.[1] See Okla. Stat. tit. 51, § 152(11)(d)(1) (including within the definition of "[p]olitical subdivision" a "county hospital . . . that is operated for the public benefit"). The district court next looked to Defendant's employment status at the time of the events in question and found that Defendant was working within the scope of her employment as an HCCH employee. That is, she was not providing medical care to Ms. Crouch in a private capacity as an employee of Dr. Suthers or the Hudson–Suthers Clinic when she assisted in delivering M.C.; rather, she was acting as an employee of HCCH. This, the district court reasoned, entitled her to the protection of governmental immunity for her actions at the hospital. As a final matter, the district court rejected Plaintiffs' argument that, even assuming Defendant had tort immunity under the OGTCA, that immunity was somehow waived because she was also covered under two comprehensive insurance policies for professional liability.

Having concluded that Defendant was immune from suit under the OGTCA and that her immunity had in no way been waived, the district court granted summary judgment in her favor. Plaintiffs then filed a motion for reconsideration, which the district court denied. Plaintiffs now bring this timely appeal.[2]

II.

---

[1] On appeal, Plaintiffs do not challenge the district court's classification of HCCH as a political subdivision. We likewise find no reason to quarrel with the district court's characterization.

[2] Because Plaintiffs' claims against the other defendants in this case now stand resolved either through settlement or by Plaintiffs' decision not to appeal a separate order of summary judgment in favor of one of the other defendants, this appeal involves only the correctness of the district court's grant of summary judgment to Defendant Daley.

We review de novo a grant of summary judgment, applying the same legal standard used by the district court. See Turner v. Pub. Serv. Co., 563 F.3d 1136, 1142 (10th Cir. 2009). We view the facts in the light most favorable to Plaintiffs as the nonmoving party and "draw all reasonable inferences" in their favor. Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quotation omitted). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

Summary judgment is appropriate only if Defendant shows "there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Tabor, 703 F.3d at 1215 (quotation omitted); see also Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000) (citation omitted). As the party seeking summary judgment, Defendant bears the initial burden of indicating the portions of the record that "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." Libertarian Party of N.M. v. Herrera, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(e) (2007 version)).

On appeal, Plaintiffs argue the district court erred in granting summary judgment because there remains a genuine issue of material fact about whether Defendant was providing medical care to Ms. Crouch as a private physician assistant or as an HCCH employee at the time of M.C.'s delivery on August 2, 2009. As they see it, Defendant could not have been acting as a county-hospital employee within the meaning of the OGTCA because, as a physician assistant, she could treat patients only under the direction and authority of her supervising physician, Dr. Suthers.

Plaintiffs contend that because Dr. Suthers was not himself an employee of the hospital, it follows that Defendant was not clothed with any independent authority to act on behalf of HCCH while providing healthcare services at that facility. Instead, Plaintiffs say, Defendant was giving private medical treatment to Ms. Crouch solely in her capacity as Dr. Suthers's employee. In other words, Plaintiffs assert that even though all of the medical care in question was indisputably furnished at HCCH, the fact that the labor and delivery happened to occur at the hospital is immaterial. In short, Plaintiffs believe Defendant is trying to dodge liability by claiming a statutory protection to which she is not entitled. We disagree. Ultimately, Plaintiffs' argument about the nature of Defendant's employment status accords with neither the letter nor the spirit of the OGTCA.

Oklahoma formally adopted the doctrine of sovereign immunity with the passage of the OGTCA. See Anderson v. Eichner, 890 P.2d 1329, 1336 (Okla. 1994) (recounting that the Oklahoma Supreme Court abrogated the common-law doctrine of sovereign immunity and "[t]he legislature responded to [the court's] invitation to codify

-7-

Oklahoma's sovereign immunity policies by enacting the 1984 Governmental Tort Claims Act"); see also Okla. Stat. tit. 51, § 152.1(A) ("The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts."). Although an employee of a political subdivision acting within the scope of her employment is immune from tort liability under the OGTCA, the responsibility for any loss incurred as a result of that employee's torts shifts to the political subdivision. See Okla. Stat. tit. 51, § 153(A) ("The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment . . . ."). "The liability of the state or political subdivision under [the OGTCA] shall be exclusive and shall constitute the extent of tort liability of the . . . employee . . . ." Id. § 153(B). In sum, "[s]tate employees acting within the scope of their employment are relieved . . . of private liability for tortious conduct." Anderson, 890 P.2d at 1336. "This immunity grant allows public employees to perform their duties . . . free from fear of suit." Id.

Plaintiffs argue the district court erred in finding Defendant was an employee of a political subdivision entitled to invoke the protection of the OGTCA for her allegedly tortious acts. To ascertain the soundness of their argument, we turn to the OGTCA's text. The statute broadly defines an "[e]mployee" as "any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time

-8-

basis."[3] Okla. Stat. tit. 51, § 152(7). The terms of the OGTCA further define "[s]cope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." Id. § 152(12). Plaintiffs' argument hinges on their contention that Defendant was not acting as an employee of HCCH when she assisted with M.C.'s delivery. As they put it, Defendant "could only have acted under the direction of her supervisor, Dr. Suthers, who is not an employee of [HCCH]. [Defendant] may only claim immunity under the [OGTCA] if her authority to act was as an 'employee' of the hospital." Appellants' Opening Br. at 9.

Plaintiffs insist that Defendant was not acting as an employee of the hospital. But, significantly, they do not dispute that Defendant had an employment agreement with HCCH or that she also received separate wages, benefits, and a W-2 from the hospital. Her salary, benefits, and W-2 were wholly distinct from those she obtained through her additional employment with the Hudson–Suthers Clinic. Moreover, the record reflects that it was HCCH—and not Dr. Suthers or the Hudson–Suthers Clinic—that billed Plaintiffs for Defendant's services during Ms. Crouch's labor and delivery. See

---

[3] The OGTCA contains a handful of specific provisions that carve out exceptions to the general rule of nonliability for state employees, including some medical professionals. See, e.g., Okla. Stat. tit. 51, § 152(7)(c) (stating that, subject to various exceptions, the State would not be held liable for torts committed by "any physician, resident physician or intern while practicing medicine or providing medical treatment to patients"). Neither the OGTCA nor controlling Oklahoma caselaw, however, contains any statement that deprives physician assistants of immunity while they are providing patient care. See also id. § 163(C) ("In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant with the exception that suits based on the conduct of resident physicians and interns shall be made against the individual . . . .") (emphasis added).

Appellants' App. at 110 (billing statement of HCCH, entitled "Patient Charge Sheet and Summary," showing charge to Ms. Crouch for services of "Physician Asst"). Plaintiffs have offered nothing in the way of evidence that would refute the reasonable inference to be drawn from these evidentiary materials: that Defendant was, in fact, an employee providing medical services on behalf of HCCH.

Notwithstanding this uncontroverted evidence, Plaintiffs still say that Defendant was not truly authorized to act on HCCH's behalf because she was not empowered to treat patients absent express direction from her supervising physician, Dr. Suthers. Here, Plaintiffs rely on the Oklahoma Physician Assistant Act, Okla. Stat. tit. 59, §§ 519.1–521. This act provides in pertinent part that "[n]othing in the Physician Assistant Act shall be construed to permit physician assistants to provide health care services independent of physician supervision." Id. § 519.2(3). Plaintiffs urge that the Physician Assistant Act must be read as removing employees like Defendant, whose work is supervised by a private physician employer, from the ambit of the OGTCA. We are not persuaded.

The OGTCA defines an "[e]mployee" as "any person who is <u>authorized to act in behalf of</u> a political subdivision." Okla. Stat. tit. 51, § 152(7) (emphasis added). An employee may be permanent or temporary, compensated or uncompensated, full-time or part-time. Id. A plain reading of the statute makes it apparent that the Oklahoma Legislature has seen fit to craft an expansive definition of employment under the OGTCA. We think it is a definition that easily sweeps broadly enough to include Defendant, with her county-hospital salary, benefits, W-2, and her responsibility for giving care to patients in need of treatment at the hospital.

-10-

As the district court noted, the OGTCA does not confine its class of protected employees merely to those acting within the scope of their <u>authority</u>. The statute goes a good deal further than that, expanding to lend its protection to any employee of a political subdivision acting within the scope of her <u>employment</u>. <u>See</u> <u>id.</u> § 153(A) ("[A] political subdivision shall be liable for loss resulting from its torts or the torts of <u>its employees</u> <u>acting within the scope of their employment</u> . . . .") (emphasis added). At bottom, Plaintiffs' cramped characterization of Defendant's work for HCCH does not reflect the reality of employment in hierarchical institutions such as hospitals. In order to effectively function, a hospital requires that many employees perform roles for which they typically possess no independent decisionmaking authority of their own. Such is the case here.

Put very simply, it was Defendant's job at HCCH to treat hospital patients. But she could not do this on her own authority. In order to do her job, she was required to take orders from a supervising physician. Those directions, carried out by Defendant, inured to the benefit of those served by the political subdivision—here, the residents of the Harper County area who depended on HCCH for medical treatment. In return for her work on its behalf, Defendant was paid by HCCH. For all relevant purposes under the OGTCA, she was HCCH's employee and was working in that capacity when she assisted with Ms. Crouch's labor and delivery at the hospital. We hold that the district court correctly determined that Defendant was an "employee" within the meaning of the OGTCA and thus entitled to tort immunity.

III.

Having concluded that Defendant was shielded from tort liability under the OGTCA, we turn to the second argument raised by Plaintiffs: that, even assuming Defendant is protected as an employee under the OGTCA, her immunity has been waived due to the fact of her professional-liability coverage under two separate insurance policies. Plaintiffs have presented evidence that Defendant was covered under both an insurance policy purchased by HCCH and an insurance policy provided through the Hudson–Suthers Clinic. They argue that this coverage resulted in a waiver of tort immunity. We find this argument unavailing as well.

The portion of the OGTCA dealing with liability insurance is found at Okla. Stat. tit. 51, § 158. This section provides that "[t]he state or a political subdivision, after conferring with authorized legal counsel, may settle or defend against a claim or suit brought against it or its employee under [the OGTCA]." Id. § 158(A) (emphasis added). It further states that

> [i]f a policy or contract of liability insurance covering the state or political subdivision or its employees is applicable, the terms of the policy govern the rights and obligations of the state or political subdivision and the insurer with respect to the investigation, settlement, payment and defense of claims or suits against the state or political subdivision or its employees covered by the policy. However, the insurer may not enter into a settlement for an amount which exceeds the insurance coverage without the approval of the governing body of the state or political subdivision or its designated representative if the state or political subdivision is insured.

Id. § 158(C) (emphasis added). By their plain language, the relevant subsections of section 158 "govern the rights and obligations of the state or political subdivision." Id. They do not touch on any separate obligation of an employee who is covered by

-12-

insurance. Section 158 cannot fairly be read as stripping an individual employee of her tort immunity due to the purchase of an insurance policy covering that employee.

To be sure, Oklahoma law recognizes that political subdivisions may "waive[] immunity to the extent of insurance coverage." Brewer ex rel. Brewer v. Indep. School Dist. No. 1, 848 P.2d 566, 569 (Okla. 1993). But we are unable to locate any authority under Oklahoma law—and Plaintiffs have pointed us to none—that puts individual employees on par with the state or political subdivision in relinquishing immunity based on insurance coverage. Indeed, that outcome strikes us as contrary to one of the OGTCA's main purposes: removing the mantle of liability from individual employees and placing it instead squarely on the shoulders of the political subdivision, so long as those employees were working within the scope of their employment—as was Defendant.

When confronted with essentially the same issue in an earlier case, the Oklahoma Supreme Court found that "[t]he purchase of liability insurance by a professional employed by the State is not necessarily inconsistent with the employee's or officer's limited immunity from suit." Neal v. Donahue, 611 P.2d 1125, 1131 (Okla. 1980). The court went on to observe that government employees' "insurance may have been purchased for a number of reasons, none of which involving the relinquishment of their limited immunity from suit." Id. "[P]rofessional liability insurance could have been purchased in order to be protected when providing professional services not connected with employment by the State, or may have been purchased solely to absorb the cost of litigation if suit should be brought, even though the employee is immune." Id. The court

concluded that "we cannot say that the acquiring of such insurance constitutes a waiver of any immunity which the party may possess." Id.

Plaintiffs attempt to cast doubt on Neal's ongoing viability. Granted, Neal was decided on common-law principles of sovereign immunity several years before the adoption of the OGTCA. See Nguyen v. State, 788 P.2d 962, 966 n.13 (Okla. 1990). But the rationale employed by the Oklahoma Supreme Court in resolving the discrete waiver-of-liability issue has not been supplanted by the later adoption of the OGTCA. This conclusion is reinforced by the plain fact that the provisions of the OGTCA dealing with liability-insurance coverage address themselves only to "the rights and obligations of the state or political subdivision and the insurer," not with any rights and obligations of an individual employee. Okla. Stat. tit. 51, § 158(C). The district court correctly determined that Defendant's separate insurance coverage did not deprive her of tort immunity.

At the time of the events that gave rise to this litigation, Defendant was working within the scope of her employment as an employee of HCCH, a political subdivision of the State of Oklahoma. Plaintiffs have failed to demonstrate any genuine issue of material fact that would lead a rational jury to conclude otherwise. Accordingly, summary judgment was appropriate.

AFFIRMED.


Entered for the Court,


-14-

Bobby R. Baldock
United States Circuit Judge